June K. SIMONS, Plaintiff–
Appellant/Cross–
Appellee,

v.

SOUTHWEST PETRO–CHEM, INC., A
DIVISION OF WITCO CHEMICAL
CORPORATION, Defendant–Appel-
lee/Cross–Appellant.

Nos. 92–3056, 92–3082.

United States Court of Appeals,
Tenth Circuit.

June 30, 1994.

Jacqueline Mixon (Bernard J. Rhodes,
with her on the briefs) of Gage & Tucker,
Kansas City, MO, for plaintiff-appel-
lant/cross-appellee.

Ross A. Hollander (W. Stanley Churchill,
with him on the briefs) of Martin, Churchill,
Overman, Hill & Cole, Wichita, KS, for de-
fendant-appellee/cross-appellant.

Before SEYMOUR, Chief Judge, MOORE,
Circuit Judge, and BURCIAGA,* District
Judge.

* The Honorable Juan G. Burciaga, Chief Judge,   New Mexico, sitting by designation.
United States District Court for the District of

SEYMOUR, Chief Judge.

June Simons, who is black, sued her former employer, Southwest Petro–Chem, Inc. (Petro–Chem), alleging that Petro–Chem discriminated against her on the basis of race by refusing her requests for light work assignments and by terminating her employment. Ms. Simons asserted claims under 42 U.S.C. §§ 2000e *et. seq.* (Title VII) and 42 U.S.C. § 1981.

The district court granted summary judgment for Petro–Chem. The court ruled that Ms. Simons' Title VII claims were barred because she had not brought the instant action within the applicable ninety-day period of limitation set out in 42 U.S.C. § 2000e–5(f)(1). The court further ruled that Ms. Simons' claims under section 1981 were barred by the Supreme Court's decision in *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), which held that section 1981 does not apply to discriminatory conduct occurring after an employment contract is formed. Finally, the district court refused to apply retroactively the 1991 Civil Rights Act provision which Congress passed in response to *Patterson* and which defines the conduct encompassed by section 1981 to include the post-formation conduct at issue in this appeal.

Ms. Simons appeals, contending that the district court erred in failing to equitably toll the filing time for her Title VII claims and in failing to apply section 1981(b) of the 1991 Civil Rights Act retroactively to her section 1981 claims. Petro–Chem cross-appeals the district court's denial of attorneys fees. We find no grounds in this record which would support equitable tolling. We further conclude that retroactive application of section 1981(b) is precluded by the Supreme Court's recent decision in *Rivers v. Roadway Express, Inc.,* —— U.S. ——, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994). Finally, we hold that the district court did not abuse its discretion in denying attorneys fees to Petro–Chem. Accordingly, we affirm.

I.

Ms. Simons argues that the district court erred in failing to consider whether her un-

timely Title VII claims were subject to equitable tolling. Although the issue of equitable tolling was argued below, the court did not address the matter in ruling that Ms. Simons' Title VII claims were barred by the applicable limitation period. The district court's failure in this regard does not require a remand, however, because the record is sufficient to permit us to resolve the issue as a matter of law. *See Scheerer v. Rose State College,* 950 F.2d 661, 663 (10th Cir.1991) (appellate court may affirm on any ground when record sufficient to permit conclusions of law, even if ground not relied on by district court), *cert. denied,* —— U.S. ——, 112 S.Ct. 2995, 120 L.Ed.2d 872 (1992).

The record, viewed most favorably to Ms. Simons, reveals the following sequence of events. After Ms. Simons was fired, she filed a charge with the EEOC claiming that she had been the victim of race discrimination. She received notice of her right to sue from the EEOC on or about May 4, 1988, and instituted a timely action in district court. On January 23, 1990, over the vigorous objection of Petro–Chem, the suit was dismissed without prejudice, pursuant to Fed.R.Civ.P. 41(a)(2), upon motion of Ms. Simons' attorney. *See Simons v. Southwest Petro–Chem, Inc.,* 130 F.R.D. 134 (D.Kan. 1990). In granting dismissal without prejudice, the district court observed that plaintiff's counsel asserted "he seeks dismissal so that his client can pursue counsel elsewhere. Another suit thus appears imminent." *Id.* at 136. Ms. Simons filed the instant action on July 11, 1990.

Petro–Chem contended below that Ms. Simons' Title VII claims were barred because they were not filed within ninety days of the date Ms. Simons received notice of her right to sue as required by 42 U.S.C. § 2000e–5(f)(1). The district court agreed, relying on our decision in *Brown v. Hartshorne Pub. Sch. Dist. No. 1,* 926 F.2d 959 (10th Cir. 1991). In *Brown,* we followed hornbook law in holding that "the filing of a complaint that is dismissed without prejudice does not toll the statutory filing period of Title VII." *Id.* at 961. We further held that because "Congress had provided a federal statute of limitation for a federal claim, . . . state tolling

and saving provisions are not applicable." *Id.*

Ms. Simons contends that federal principles of equitable tolling, which we did not consider in *Brown,* should apply here. However, viewed most favorably to Ms. Simons the record simply does not contain a basis for the application of equitable tolling under the standards established in our cases. We have made clear that a Title VII time limit will be tolled only upon a showing of " 'active deception' " where, for example, the plaintiff has been " 'actively misled' " or " 'lulled into inaction by her past employer, state or federal agencies, or the courts.' " *Johnson v. United States Postal Serv.,* 861 F.2d 1475, 1480–81 (10th Cir.1988) (quoting *Martinez v. Orr,* 738 F.2d 1107, 1110 (10th Cir.1984)), *cert. denied,* 493 U.S. 811, 110 S.Ct. 54, 107 L.Ed.2d 23 (1989).

■ Ms. Simons asserts that she was actively misled into believing she could file beyond the ninety day limit by the district court's observation in its order dismissing the first action without prejudice that another suit appeared imminent, and by statements from opposing counsel assuming that another suit would be filed. However, these statements by the court and opposing counsel were made *in response to* the statements by plaintiff's then counsel that another suit would be filed. Merely acknowledging counsel's representations that a second suit would be forthcoming does not rise to the level of active deception necessary to support application of equitable tolling. Accordingly, we agree with the district court that Ms. Simons' Title VII claims were not timely filed.

## II.

Ms. Simons also contends that the district court erred in refusing to apply the pertinent provisions of the 1991 Civil Rights Act retroactively to her section 1981 claims. Ms. Simons alleged that she was refused light work assignments and that her employment was terminated on the basis of race.[1] She sought recovery under section 1981, which provided at the time the alleged illegal conduct occurred that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981 (1988).

■ While Ms. Simons' original action was pending in district court, the Supreme Court handed down *Patterson,* which held that section 1981 "does not apply to conduct which occurs after the formation of a contract and which does not interfere with the right to enforce established contract obligations." *Patterson,* 491 U.S. at 171, 109 S.Ct. at 2369. Under this ruling, Ms. Simons was precluded from asserting her claims for discriminatory post-formation conduct and/or termination under section 1981. *See Trujillo v. Grand Junction Regional Ctr.,* 928 F.2d 973, 975–76 (10th Cir.1991). While her second suit was pending below, the 1991 Civil Rights Act became law. Under that Act and contrary to the opinion in *Patterson,* conduct remediable by section 1981 includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C.A. § 1981(b) (West Supp.1994). The district court refused to apply section 1981(b) retroactively and Ms. Simons appealed. We abated the appeal pending the Supreme Court's decisions in two cases that presented the retroactivity issue with respect to several provisions of the 1991 Act, including the section upon which Ms. Simons relies here. Those cases have now been decided. *See Landgraf v. USI Film Prods.,* —— U.S. ——, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994); *Rivers v. Roadway Express, Inc.,* —— U.S. ——, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994).

---

1. At one point late in the proceedings below, in an attempt to avoid the impact of *Patterson,* Ms. Simons asserted that Petro–Chem's failure to provide her with light work assignments amounted to a refusal to rehire her. Prior to enactment of the 1991 Civil Rights Act, this court had "[expressed] no opinion as to whether a cause of action for rehire survives *Patterson,* and [pointed] out only that those courts that have faced the issue so far have reached differing results." *Padilla v. United Air Lines, Inc.,* 950 F.2d 654, 655 (10th Cir.1991). The district court here followed those decisions that have read *Patterson* to preclude the assertion of failure-to-rehire claims under section 1981. Ms. Simons does not challenge this ruling on appeal, and we therefore do not address it.

The Court's decision in *Rivers* is dispositive of Ms. Simons retroactivity argument. In *Rivers*, as here, the plaintiffs sued under section 1981, alleging they had been fired because of their race on the basis of conduct that occurred before the passage of the 1991 Act. While their action was proceeding in district court, *Patterson* was decided and the court relied on that case to conclude that the discharge claims were not covered by section 1981. The 1991 Act became law when the case was on appeal, and the plaintiffs argued that the Act applied to them. The court of appeals concluded that the 1991 Act did not apply retroactively and that the claims were therefore governed by *Patterson.* The Supreme Court agreed.

In addressing the retroactivity of the 1991 Act in *Landgraf,* the Supreme Court stated:

> When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

*Landgraf,* —— U.S. at ——, 114 S.Ct. at 1505. The Court concluded that Congress did not express a clear intent that the Act apply to cases arising before its enactment. *Id.* at ——–——, 114 S.Ct. at 1493–96. The Court then observed that in assessing the retroactivity of the Act's provisions, "courts should evaluate each provision of the Act in light of" the judicial principles quoted above. *Id.* at ——, 114 S.Ct. at 1505. Applying those principles to the two provisions at issue in *Landgraf,* the Court ruled that neither is to be given retroactive application.

Relying on its analysis in *Landgraf,* the Court held in *Rivers* that the retroactive application of section 1981(b) is not supported by a negative implication argument based on sections 402(a), 109(c) and 402(b) of the Act. *See Rivers,* —— U.S. at ——, 114 S.Ct. at 1514. The Court further held that, for the reasons stated in *Landgraf,* "the important new legal obligations [section 1981(b) ] imposes bring it within the class of laws that are presumptively prospective." *Id.* —— U.S. at ——, 114 S.Ct. at 1515.

Finally, the Court turned to an argument that was not applicable to the sections at issue in *Landgraf.* As does Ms. Simons here, the plaintiffs in *Rivers* contended that section 1981(b) should apply to their case because it restored the understanding of section 1981 that prevailed prior to the Court's decision in *Patterson.* The Court was not persuaded, finding nothing in the text of the Act or its legislative history to support the argument that section 1981(b) "was intended to 'restore' prior understanding of [section] 1981 *as to cases arising before the 1991 Act's passage.*" *Id.* at ——, 114 S.Ct. at 1517. The Court stated:

> We may assume, as petitioners argue, that [1981(b) ] reflects congressional disapproval of *Patterson's* interpretation of [section] 1981. We may even assume that many or even most legislators believed that *Patterson* was not only incorrectly decided but also represented a departure from the previously prevailing understanding of the reach of [section] 1981. Those assumptions would readily explain why Congress might have wanted to legislate retroactively, thereby providing relief for the persons it believed had been wrongfully denied a [section] 1981 remedy. Even on those assumptions, however, we cannot find in the 1991 Act any clear expression of congressional intent to reach cases that arose before its enactment.

*Id.* —— U.S. at ——, 114 S.Ct. at 1516. In addition, the Court rejected the argument that a lack of clear Congressional intent is not dispositive with respect to restorative statutes because they should be presumed to apply to pending cases. "Our decisions simply do not support the proposition that we

have espoused a 'presumption' in favor of retroactive application of restorative statutes." *Id.* at ——, 114 S.Ct. at 1518.

In view of the Supreme Court's ruling under analogous circumstances in *Rivers* that the 1991 Act's definition of conduct covered by section 1981 is not to be given retroactive effect, we affirm the decision of the district court.

■ Petro–Chem cross-appeals the district court's denial of its request for attorneys fees. A Title VII defendant is not entitled to an award of fees unless the court finds that the plaintiff's "claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Christianburg Garment Co. v. EEOC,* 434 U.S. 412, 422, 98 S.Ct. 694, 701, 54 L.Ed.2d 648 (1978). The same standard applies to a fee award request by a section 1981 defendant under 42 U.S.C. § 1988. *See Carter v. Sedgwick County,* 929 F.2d 1501, 1506 (10th Cir.1991). The award of such fees is committed to the trial court's discretion. *Id.*

■ The district court here viewed Petro–Chem's request for attorneys fees as a motion for sanctions under Fed.R.Civ.P. 11 and denied it. Petro–Chem contends that the court erred in addressing the fee issue under Rule 11, and urges this court to award it fees under the *Christianburg* standard. The lower court's characterization was not unreasonable in view of Petro–Chem's requests at various points in the proceedings for fees under both Rule 11 and the *Christianburg* standard based on its contention that Ms. Simons' suit was or had become frivolous, meritless, and vexatious. Under the circumstances of this case, we thus see no distinction between the standard applicable to assessing attorneys fees under Rule 11 and assessing them under *Christianburg.* We have reviewed the record and we are not convinced that the court abused its discretion in ruling that a fee award was not warranted by plaintiff's conduct of this lawsuit.

AFFIRMED.